# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JOSEPH J. BELILE,

          Plaintiff,

 vs.                 9:15-CV-423 (TJM/ATB)

DAN DOMINIE,

          Defendant.

JOSEPH J. BELILE, Plaintiff pro se
ZACHARY M. MATTISON, Esq. for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). In this civil rights complaint plaintiff alleges that he was denied constitutionally adequate conditions of confinement while he was in the Special Housing Unit ("SHU") of the St. Lawrence County Correctional Facility ("SLCCF") between August and September of 2013 and October 2013 to April of 2014.[1] (Complaint ("Compl.") ¶ 6(2)) (Dkt. No. 1). Plaintiff seeks substantial monetary relief. (Compl. ¶ 8).

Presently before the court is defendant Daniel Dominie's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 19). Plaintiff has responded in

---

[1] There was a typographical error in plaintiff's complaint. He stated that he was in SLCCF SHU between August 13, 2013 and September 12, 2013 "and again October 2013 through April **2013**." (Compl. ¶ 6(2)) (emphasis added). However, it is clear from subsequent submissions that plaintiff intended to write April 2014. The court will rely upon the correct dates.

opposition to the motion, and defendant has filed a reply. (Dkt. Nos. 21, 22). For the following reasons, this court agrees with defendant and will recommend dismissal of the complaint.

## DISCUSSION

**1.   Facts**

Plaintiff alleges that he was confined to the SHU at SLCCF between August 13, 2013 and September 12, 2013. (Compl. ¶ 6(2)). He was again confined to the SHU between October 2013 and April 2014. (*Id.*) Plaintiff states that his SHU cell had a "recreation room" attached to it. (Compl. at ¶ 6(3)). The recreation room contained a "window on the wall." The window had a screen with a solid removable[2] sheet of plexiglass over it. Plaintiff alleges that when the plexiglass was in place, there was a lack of "fresh air."

Plaintiff claims that defendant Domine refused to remove the plexiglass for the entire time that plaintiff was in SHU, stating that he was not required to do so. (Compl. ¶ 6(4)). Plaintiff claims that he was denied fresh air 24 hours per day for the six to six and one half months that he was in SHU. (*Id.*) Plaintiff states that this made the fact that he was in SHU for "months on end" worse. Plaintiff also claims that, as a result of the "continuous" denial of fresh air and "visual outside scenery,"[3] he suffered from panic attacks due to anxiety "and many other mental problems." (Compl. ¶ 6(5)).

---

[2] The plexiglass was only removable by facility maintenance personnel. (Compl. ¶ 6(3)).

[3] Plaintiff also claims that he was denied the ability to see the outdoors because the window was "up higher than plaintiff's head." (Compl. ¶ 6(5)).

## II. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment

3

motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.*, 2006 WL 1133247, at *3 & n.11 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

## III. Conditions of Confinement

### A. Legal Standards

Plaintiff was a pretrial detainee at the time of the incidents in this case. As such, he was protected from unconstitutional living conditions by the Due Process Clause of the Fourteenth Amendment, but the standards for his due process protection are the same as those that protect convicted inmates from Cruel and Unusual Punishment under the Eight Amendment. *LaRock v. Amato*, No. 9:12-CV-503, 2013 WL 5466410, at *9

(N.D.N.Y. Sept. 30, 2013) (citations omitted).

The constitutional prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To establish an Eighth Amendment claim based on unsafe or medically inappropriate living conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *See Farmer*, 511 U.S. at 834.

"The deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Under the objective standard, a plaintiff must allege a deprivation "'sufficiently serious' such that the deprivation denied the minimal civilized measures of live's necessities." *Curry v. Kerik*, 163 F. Supp. 2d 232, 236 (S.D.N.Y. 2001); *Simmons v. Cripps*, No. 12 Civ. 1061, 2013 WL 1290268, at *17 (S.D.N.Y. Feb. 15, 2013); *Inesti v. Hosan*, No. 11 Civ. 2596, 2012 WL 3822224, at *7 (S.D.N.Y. Sept. 4, 2012).

The subjective element of the Eighth Amendment analysis focuses on whether the defendant official acted with "a sufficiently culpable state of mind." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. at 300). "Deliberate indifference" requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer*, 511 U.S. at 835. In order for a prison official to act with deliberate indifference, he must know of and disregard

an excessive risk to an inmate's health or safety. *Hathaway*, 37 F.3d at 66. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*.

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. at 847. "A risk can be so obvious that a jury may reasonably infer actual knowledge on the part of the defendant[] sufficient to satisfy the subjective component of the deliberate-indifference standard." *Hall v. Bennett*, 379 F.3d at 464 (citing inter alia *Farmer*, 511 U.S. at 842. Common sense is relevant to deciding the obviousness of the risk. *See Hall v. Bennett*, 379 F.3d at 465 (citing *Fruit v. Norris*, 905 F.2d 1147, 1150–51 (8th Cir. 1990)).

A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id*. at 835, 837. The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer v. Brennan*, 511 U.S. at 844. Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state

6

may be nonculpable." *Salahuddin*, 467 F.3d at 281.

　　**B.　Application**

　　Plaintiff alleges that he was housed in unconstitutional conditions because the window in the recreation area of his cell was covered with plexiglass the entire time that he was confined in SHU. Plaintiff claims that these were unconstitutional conditions because he was not afforded "fresh air," and he could not see out the window because it was placed higher than his head.

　　In support of his motion for summary judgment, defendant Dominie has filed a declaration, describing the conditions that plaintiff is challenging. Defendant Dominie is the Jail Administrator at SLCCF. (Dominie Decl. ¶ 1). Defendant Dominie states that the SHU at SLCCF was designed so that "each prisoner had [his] own cell with each cell having its own individual recreation room attached to the cell." (*Id.* ¶ 5). Inmates in the SHU are confined to their cells "around-the-clock" except for one hour each day during which they may enter the recreation room. (*Id.* ¶ 6). Each of the recreation rooms has an opening in the wall that is approximately five feet, four inches long, by two feet wide, which is "open to the outdoors and is covered by bars and a permanent screen." (*Id.* ¶ 8).

　　Defendant Dominie states that due to the harsh winters and cold weather in St. Lawrence County, the recreation room windows were designed "to be fitted with a sheet of clear plexiglass that could be installed over the opening when the weather turned cold." (*Id.* ¶ 9). These coverings were part of the original design of the facility, and were originally approved by the New York State Commission of Corrections. (*Id.*

¶¶ 10, 11). Defendant Dominie states that the plexiglass coverings were temporary and only utilized during the colder months in order to "keep the frigid air out of SLCCF," and avoid cold and uncomfortable conditions for the inmates in SHU. (*Id.* ¶¶ 12, 13). Defendant Dominie states that, while the plexiglass did limit the movement of air through the opening, and into the recreation area, it was not sealed tightly and allowed some fresh air to enter the recreation area while keeping out the cold air. (*Id.* ¶¶ 14-15). The inmates could look through the window because the plexiglass was clear. (*Id.* ¶ 16).

The plexiglass could be removed by maintenance staff by removing two screws and brackets holding the covering in place. Both installation and removal of the covering were based on the weather in a particular year, so there was no set schedule. (*Id.* ¶¶ 18-19). However, defendant Dominie states that the plexiglass was "never in place over the SHU area recreation windows during the "late spring, summer and early fall." (*Id.* ¶ 20).

In response to defendant's motion, plaintiff has submitted a letter, dated April 15, 2014 from Thomas J. Loughren, Commissioner in the State Commission of Correction, to Sheriff Kevin Wells.[4] (Pl.'s Ex. 2). The letter states that plaintiff's grievance was "accepted in part," and that the plexiglass "installed over the opening that would normally allow the grievant to have a direct view of the outdoors and allow for fresh air to enter, is not consistent with the requirements of this section." (*Id.*) The letter further

---

[4] The letter was not addressed to this defendant, nor was defendant Dominie on the "cc" list at the bottom of the letter.

indicated that "Commission senior staff" would be working with facility officials to ameliorate any remaining issues raised in this grievance as it pertains to ensuring all inmates access to fresh air and a view of the outdoors during outdoor exercise." (*Id.*) Finally, the letter stated that no "other" allegations in the plaintiff's grievance were sustained by the available evidence, and the Sheriff was directed to "provide an appropriate remedy." (*Id.*)

The court would first note that even if the conditions in plaintiff's SHU cell did violate "minimum standards" for New York State regulations, such a violation does not automatically rise to the level of a constitutional violation. *Simmons v. Cripps*, No. 12 Civ. 1061, 2013 WL 1290268, at *12 (S.D.N.Y. Feb. 5, 2013); *Doe v. Conn. Dep't of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990). Defendant does not dispute that at certain times of the year, plexiglass covers the windows in the recreation room attached to plaintiff's cell. Defendant argues that the plexiglass was attached to the window for a legitimate purpose. No one can seriously question the statement that it is cold in St. Lawrence County in the winter, and the court would point out that the majority of the time that plaintiff states that he spent in SHU was between October 2013 and April of 2014, which included all of the winter months. Defendant Domine states that, without the plexiglass cover, the five by two foot windows are open to the outdoors and are only covered by bars and a screen. It would appear that failing to cover such windows in the winter could cause great discomfort and serious risk to the

9

SHU inmates' health and safety because of the cold.[5] *See e.g. Gaston v. Coughlin*, 249 F.3d 156, 164-65 (2d Cir. 2001) (citing *inter alia Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (inmate deliberately exposed to bitter cold in his cell block for three months); *Beck v. Lynaugh*, 842 F. 759, 761 (5th Cir. 1988) (vacating summary dismissal of a claim that inmates were exposed to winter cold due to broken windows).

At worst, in this case, plaintiff may have been exposed to stuffy air in his recreation room – which he was allowed to use one hour each day – for approximately one month, August 13, 2013 until September 12, 2013.[6] It is true that exposing inmates to "extreme temperatures" without adequate ventilation may violate the constitution. *See Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citing *Gaston, supra*; *Corselli, supra*). However, in *Marino v. Watts*, No. 12-CV-801, 2015 WL 5603454, at *3 (N.D.N.Y. May 29, 2015), Report-Rec. *adopted in part, rejected in part on other grounds*, 2015 WL 5603472 (N.D.N.Y. Sept. 23, 2015), the court found that an inmate who was placed in SHU for two and one half months, during which he did not have

---

[5] Plaintiff's statement that he is "better able to know what he can take as far as the cold air" (Dkt. No. 21-1) does not change the fact that defendant Dominie is responsible for all the inmates in SHU, not just the plaintiff. Plaintiff also stated that none of the other SHU inmates stated that they were "averse" to obtaining fresh air. (*Id.*) Plaintiff's conclusory statement does not support his position. In his response to defendant's motion, plaintiff also states that the defendant "could have allowed plaintiff to be escorted to and locked into the main pod rec area and had access to fresh air in that way." (Dkt. No. 21-1 at 6). This statement is completely random, and plaintiff never mentioned any request to be escorted anywhere to have access to fresh air. Thus, this court does not consider statement as part of the complaint. Plaintiff also alleges that the plexiglass was in place during the summer "months" while plaintiff was confined in the SHU. Plaintiff was not in SHU through the summer months and cannot make such a conclusory statement without basis. August 13 through September 12, although arguably encompasses part of the summer cannot be categorized as the "summer months." In any event, whether the plexiglass was in place when plaintiff was not subject to that condition is not relevant to this case.

[6] Although plaintiff states that this is "two months," it is actually only 30 days.

10

"window ventilation, sunshine, or fresh air" in addition to other harsh conditions,[7] failed to establish that the conditions were sufficiently serious under the objective prong of the Eighth Amendment/Due Process analysis. *See also Beckford v. Portuondo*, 151 F. Supp. 2d 204, 214 (N.D.N.Y. 2001) (access to fresh air is not constitutionally required for a disruptive inmate kept on keeplock status for six months, but who was allowed one hour of alternative indoor recreation time each day).

Plaintiff in this case complains only of the allegedly poor ventilation in his recreation area during the time that he was in SHU, only one month of which was during a potentially warm part of the year.[8] He states that defendant Dominie's actions made his stay in SHU "worse." (Compl. ¶ 6(4)). Plaintiff also claims that he had "panic attacks and many other mental problems." (Compl. ¶ 6(5)). Other than making his stay in SHU "worse" than it should have been, plaintiff alleges no physical problems as a result of the allegedly poor ventilation. In addition, defendant states that there are no medical records referencing any panic or anxiety attacks or any other mental problems, expressed by plaintiff to facility medical personnel as being due to the conditions in SHU during any of the time that he spent there. (Mattison Reply Decl. ¶ 3).

Plaintiff has not raised a genuine issue of fact that such conditions were

---

[7] In addition to the bad ventilation, the inmate in *Marino* claimed that he was only permitted to shower every three days, his lights were left on all night, and sometimes all day, and his toilet was only flushed once a day, "if at all." 2015 WL 5603454, at *3.

[8] The court notes that plaintiff alleges that he could not "see" out the windows. However, plaintiff's complaint was that the windows were too high, not that the plexiglass prevented him from seeing outdoors. Plaintiff has not alleged that the view was obstructed by the clear plexiglass. In any even, the height of the window was not a condition that defendant Dominie could change.

"sufficiently serious." This court does not find that the condition as alleged by plaintiff for the period of time that it might have been a problem, violated contemporary standards of decency. In addition, given the stated reason for the plexiglass covering, there is no question of fact regarding defendant Dominie's state of mind. Plaintiff has not raised an issue of fact with respect to deliberate indifference, and the case may be dismissed on summary judgment.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 19) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 21, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge